T. E. CHEEK AND HIS WIFE, ELIZABETH TAYLOR CHEEK, v. J. M. N. GREGORY ET AL.

(Filed 20 November, 1929.)

1. **Will E a—In absence of residuary clause property not devised descends to heirs at law.**

   In the absence of a general residuary clause in a will, realty owned by the testator at his death and not devised in the will descends to his heirs at law as in case of intestacy.

2. **Will E b—In this case held: "Balance" referred to personalty only and as to certain realty testator died intestate.**

   Where a testator in disposing of his property by will devises certain of his lands to his widow for life and by various other items certain other lands to his mother, brother and sisters, and then by a subsequent item "after the foregoing I want my personal property and all my moneys on hand" equally divided between his wife and son, followed by another item "if there is over ten thousand dollars each for him and his mother besides real estate and property named, the balance I wish to go to my brother and sisters and their children": *Held*, the word "balance" thus used refers only to the personal property, and there being no residuary clause after the life estate devised, the lands thus devised go to the son as the sole heir at law of the testator, as to this property the testator having died intestate.

**3. Appeal and Error J e—Refusal to strike out paragraph of reply which does not affect the cause of action will not be held for error.**

The refusal of the trial court to strike out a certain paragraph of the reply contradictory to one in the complaint will not be held for reversible error on appeal when the allegations thereof do not affect the result of the trial in the lower court.

BROGDEN, J., did not sit.

APPEAL by defendants from *Devin, J.,* at September Term, 1929, of DURHAM. Affirmed.

Action for specific performance of a contract for the purchase of land described therein, and for judgment that the defendants, who claim an interest in said land, have no right, title or estate in or to the same.

There was a judgment by default, for want of an answer, against certain of the defendants named therein, adjudging that said defendants have no right, title, or estate in or to said land, and that as against said defendants, plaintiffs are the owners and are seized in fee of said land. There was no exception to this judgment.

As to the other defendants, the action was heard upon the pleadings and admissions made in open court. Judgment was rendered that the answering defendants, who claim as heirs at law of the brother and sisters of J. W. Cheek, and their children, have no right, title or estate in or to the land described in the contract, and that plaintiffs are the owners and are seized in fee simple of said land; and that plaintiffs are entitled to the specific performance of the contract for the purchase of said land by the other answering defendants.

In accordance with said judgment, there was a decree that the defendants, the Georgia Industrial Realty Company, as assignee of J. M. N. Gregory, and the Southern Railway Company, as beneficiary under said contract, specifically perform the same, by paying to the plaintiffs the sum of $90,000, upon the delivery to said defendants by the plaintiffs of their deed attached to the complaint as Exhibit B, conveying to said defendants the land described in the contract.

From said judgment and decree defendants appealed to the Supreme Court.

*Manning & Manning for plaintiffs.*
*F. C. Owen, W. S. Lockhart and McLendon & Hedrick for defendants.*

CONNOR, J. At the hearing of this action in the Superior Court, it was agreed by counsel for both plaintiffs and defendants, that the controversy presented for decision by this action involves only the construction of a provision of the last will and testament of J. W. Cheek, deceased. It is conceded that plaintiffs are entitled to a decree for the

specific performance of the contract alleged in the complaint, if the plaintiff, T. E. Cheek, is the owner, and is seized in fee of that part of the land described in the contract, which was owned by J. W. Cheek, at his death, and also that he is such owner and is so seized, if the defendants, other than the purchaser under the contract, have no right, title or estate in or to the land described therein. These defendants contend that as heirs at law of the brother and sisters of J. W. Cheek, deceased, and their children, by virtue of a provision in his last will and testament, they are the owners in fee, and entitled to the possession of said land as tenants in common.

J. W. Cheek died in September, 1875. He left surviving him his wife, Rebecca N. Cheek, and his only son and heir at law, the plaintiff, Thomas Edgar Cheek, who was then nine years of age. His mother, one brother and four sisters also survived him. One of these sisters, Amanda Cheek, was unmarried. His sister, Mrs. Nancy Malone, was dead, having left surviving her three children, William A. Malone, Charles Malone, and Callie Watts. These children of his deceased sister were living at the death of the said J. W. Cheek.

At his death the said J. W. Cheek owned considerable property, both real and personal. He was a resident of Orange County, North Carolina, and had been engaged in the mercantile business. He owned that portion of the land described in the contract, the title to which is involved in this action. This land was situate in that part of Orange County which is now included in Durham County.

A short time before his death, to wit, on 12 April, 1875, the said J. W. Cheek executed his last will and testament, which was duly probated and recorded in the office of the clerk of the Superior Court of Orange County, on 20 September, 1875. This last will and testament, a certified copy of which is attached to the complaint in this action as Exhibit D, is as follows:

"Knowing the uncertainty of life and the certainty of death, I make and publish this my last will and testament.

1st. I give to my wife, Rebecca N. Cheek to have during her natural life the following property, to wit: the house and lot where I now live extending to the plank fence next to where my mother and Sister Amanda live.; the house and lot where Col. Dalby lives, with two acres land to go with it, and my half interest in the E. J. Parrish lot and one I bought joining it, also the Frank Barbee land and the land where Ben Carroll lives.

2nd. I give to my son Thomas Edgar Cheek my store houses and lot, except that his mother shall have the rents derived from the old store house during the time she is my widow. I also give to Thomas Edgar

the house and lot where P. T. Conrad lives and the James Tillett place, and the land I bought of L. Morris. I also give him my interest in Tobacco Factory lot and Cotton Gin lot, also a vacant lot bought of W. J. Green on Main Street.

3rd. I give to my mother and sister Amanda the use of the house and lot in which they live during their lives, unless Amanda gets married, and then it goes to Edgar.

4th. I give to brother Newton and to each one of my sisters One Thousand Dollars each, and to Wm. A. Malone, Charles Malone and Callie Watts, five hundred dollars each, in cash.

5th. If there is a new Brick Church built by members of Rose of Sharon Church during next three years, I give five hundred dollars to aid in building it.

6th. If my store is in operating at my death and J. L. Markham still with me, I wish him to have at least six months to sell goods and wind up, and if found necessary extend time to twelve months.

7th. I give Thomas Edgar a good bed & furniture, the best bureau and my double case gold watch.

8th. After the foregoing I want my personal property and all moneys on hand divided equally between Thomas Edgar and his mother, except that she shall have all the house hold & kitchen furniture, except what I named for him, and he to have one thousand dollars in Raleigh National Bank.

9th. If there is over ten thousand dollars each for him and his mother including what they may get on my life policy in cash, besides real estate and property named, the balance I wish to go to my brother and sisters and their children.

10th. I wish J. M. Cheek to be allowed to redeem land of his I bought, and if there is a street run from about J. A. McMannen's stables across along back of Hughes & Co. Factory lot, then I desire a line to extend from lower or N. West corner of Simeon Barbee's line straight toward the back line of said land and to extend in other direction to Hughes & Co. line and McMannen, then to have South of said street, I named if run and West of the line joining with West line of Sim Barbee, and I give him any debt he may owe me and the balance of the land named may be divided between Edgar and his mother.

11th. I appoint my wife, Rebecca H. Cheek and Fred C. Geer, my executors to carry out this my last will and testament.

In witness I set my hand & Seal this 12th day of April 1875.

(s)　J. W. CHEEK (Seal).

May 20th 1875.

Witness:
　　J. L. MARKHAM.

Codicil—I do not wish J. A. McMannen to have the portion of land I name for him upon any condition but that a street is run where I name. Signed 12th April 1875.

(s)   J. W. CHEEK (Seal)

May 20th 1875
Witness: ·
    J. L. MARKHAM."

After the death of the said J. W. Cheek his widow, Rebecca N. Cheek, intermarried with A. D. Markham, and thereafter died in 1918; his mother died on 22 September, 1875, and his sister, Amanda Cheek, remained unmarried until her death in 1928. Since the death of his mother, the plaintiff, T. E. Cheek, has been, and is now in the possession of the lands devised to his mother, for her life, by Item 1 of the last will and testament of the said J. W. Cheek. Since the death of his aunt, Amanda Cheek, the plaintiff has been in possession of the land devised to her and the mother of J. W. Cheek, for their lives, by Item No. 3 of said last will and testament. The plaintiff claims the said lands as the sole heir at law of his father, J. W. Cheek, contending that as to the reversionary interest in these lands, the said J. W. Cheek died intestate. The defendants claim the said lands, as heirs at law of the brother and sisters of J. W. Cheek, and their children, contending that said lands, upon the death of the widow and sister of J. W. Cheek, went to the brother and sisters of J. W. Cheek, and their children, under the provisions of Item 9 of his last will and testament.

With respect to these conflicting contentions, Judge Devin was of opinion that "construing the entire will, and particularly paragraphs 8 and 9, it is apparent that the testator did not intend the word 'balance' as used in Item 9 of said will to refer to or pass anything but the balance of his personal property, and that Item 9, although separately numbered, was intended by the testator as and was in effect a proviso or limitation upon the disposition of all his personal property disposed of by Item 8, and that said word 'balance' so used in Item 9 was not intended by the testator to and did not pass any of the real estate or interest in real estate to the brother and sisters of said testator and their children."

In this opinion we concur. There is no error in the judgment "that the defendants, heirs at law of the brother and sisters of J. W. Cheek and their children, have no right, title or interest in the land covered by the deed of plaintiffs tendered to the defendants, the Georgia Industrial Realty Company, for the benefit of the Southern Railway Company." It follows from this decision that the judgment and decree in accordance therewith should be affirmed.

The exception to the refusal of the court to strike out paragraph one of the reply cannot be sustained. In both their complaint and in their reply to the answer of the defendants, plaintiffs allege that J. W. Cheek died intestate as to the reversion in the lands devised in Item 1 of his will to his wife for her life, and in Item 3 of said will to his mother and sister, Amanda Cheek, for their lives. The allegation in the complaint that neither the widow of the testator nor the plaintiff, T. E. Cheek, received the sum of $10,000 from his personal estate was not material to their recovery. The admission in their reply that said sums were received by the said widow and by the plaintiff, does not affect the cause of action upon which plaintiffs rely for their recovery in this action. This cause of action is based upon the allegation that the reversionary interest in the lands devised to his wife, for her life, by Item 1, and to his mother and unmarried sister, for their lives, by Item 3, of the last will and testament of J. W. Cheek, were not devised by the testator, and therefore, descended to the plaintiff, T. E. Cheek, as his sole heir at law. It is well settled, of course, that in the absence of a general residuary clause in a will, land owned by the testator at his death, and not devised by his will, descends to his heirs at law, as in case of intestacy. *Reid v. Neal,* 182 N. C., 192, 108 S. E., 769.

There is nothing in the language used by the testator in Item 9 of this will, which requires or justifies a construction of said item by which it must be held that the testator intended to deprive his only son—an infant, nine years of age—of the lands devised to his wife for her life, or to his mother and sister, for their lives, at their death, and to give said lands to his brother and sisters and their children. We find no error in the judgment or in the decree.

Affirmed.

BROGDEN, J., not sitting.