KINGSLAND VAN WINKLE v. CATHOLIC MISSIONARY UNION ET AL.

(Filed 9 June, 1926.)

1. **Wills—Intent—Interpretation—Surrounding Circumstances.**

   The intent of the testator as gathered from the relevant language used in the will construed in its entirety, will control its interpretation, and his surrounding circumstances will also be given consideration that may have clearly influenced him in making a disposition of his property.

2. **Same—Residuary Clause.**

   A residuary clause of a will, wherever placed therein, will be given effect as such when by correct interpretation it appears that it was in conformity with the testator's intent, whether reference is therein

made to it as the residue of the estate after specific bequests or devises are provided for, or the words "rest" or "remainder," etc., are used by him.

CIVIL ACTION before *William B. Snow, Emergency Judge,* at March Term, 1926, of BUNCOMBE.

The judgment contains the facts material to the controversy. These facts are set out in the judgment as follows:

"That Mary W. Byrne, late of Asheville, North Carolina, died on or about 19 February, 1913, leaving a last will and testament and codicil thereto, which were duly admitted to probate in said Buncombe County, North Carolina, on 17 March, 1913, and are duly recorded in the office of the clerk of the Superior Court of said county, in Will Book 'C,' page 483 *et seq.,* a certified copy of which is set forth in the record in this case, and the plaintiff, Kingsland Van Winkle, is duly substituted and acting trustee under the said will.

"That the said testatrix, Mary W. Byrne, left surviving her one child, Rose M. Byrne, who died on 29 July, 1924, without ever having been married and without leaving issue, and leaving a last will and testament in which the plaintiff, Kingsland Van Winkle, was named as executor and who has duly qualified as executor of the said last will and testament.

"The question presented upon the record in this case is the construction of the will of Mary W. Byrne as to the disposition upon the death of Rose Mary Byrne of the remainder of the trust estate created by the provisions of the second paragraph of the said will of Mary W. Byrne, in the following words:

"If my said daughter, Rose Mary Byrne, shall survive me I give all said property, or the proceeds thereof, one-half to my said daughter absolutely forever free from the control of any husband; and the other half to the trustee hereinafter named in trust to invest and reinvest," etc., "and upon the death of my said daughter I give any then remaining principal of said trust to her issue, then surviving, absolutely forever; or if she shall leave no issue surviving her, then I give said then remaining principal to the same legatees as hereinafter provided for the residuary of my estate in the event that my said daughter shall not survive me nor leave issue surviving me."

By paragraph three of the will the testatrix provides as follows:

"If my said daughter shall not survive me, but shall leave issue surviving me, I give all my property and the proceeds thereof to her said issue, absolutely forever.

"It is my will that if any questions shall arise in construing this will, all doubts shall be resolved in favor of my said daughter, and her issue, if any."

By the fourth paragraph of the will the testatrix provides:

"If my said daughter shall not survive me nor leave issue surviving me, then I give to" (certain named legatees certain pecuniary and specific bequests).

By the fifth paragraph of the will the testatrix provides:

"All the rest, residue and remainder of all my property or the proceeds thereof, including any legacies that may lapse or for any other reason be ineffective, I give (if neither my said daughter nor issue of her shall survive me) to the above named Apostolic Mission House for the purpose of its incorporation, and request that said legacy be known as 'The Byrne Fund for the Propagation of the Faith.'"

The court is of opinion, and so holds, that construing and interpreting the will from the language of the instrument as a whole to ascertain and arrive at the intention of the testatrix, and applying the rules of construction laid down and announced by the courts, the intention of the testatrix was and the will shall be so construed that upon the death of Rose Mary Byrne without issue, the said trust estate went to the legatee named in the fifth clause or paragraph of the will, to wit, Apostolic Mission House, under and by virtue of the provisions in the second paragraph or clause of the will in the following words: "or if she shall leave no issue surviving her, then I give said then remaining principal to the same legatees as hereinafter provided for the residuary of my estate in the event that my said daughter shall not survive me nor leave issue surviving me."

The court being of the opinion that the testatrix intended to designate as the person to whom said estate should go in the event above named and which was the event which actually happened, the object of her testamentary intention described and named in the fifth paragraph of the will, and that the said fifth paragraph of the will is the residuary clause referred to and intended in the above quoted portion of the second paragraph of the will.

It being alleged in the complaint and admitted in the answer and found as a fact by the court in this cause that Apostolic Mission House is owned by the defendant, Catholic Missionary Union, a corporation organized under the laws of the State of New York, and having its principal place of business in New York City, N. Y.

Wherefore, it is ordered, adjudged and decreed by the court that Kingsland Van Winkle, substitute trustee of the last will of Mary W. Byrne, make distribution of the remainder of the property now in its hands and which may be subsequently received by him, being the remainder of the trust estate aforesaid, in accordance with the will of Mary W. Byrne, as herein construed by the court, to Catholic Missionary Union, the owner of Apostolic Mission House and to pay over any

moneys in his hands belonging to said trust estate to the said Catholic Missionary Union and to execute and deliver proper deeds to the said Catholic Missionary Union for the real estate belonging to said trust estate, the same being an undivided one-half interest in the lands situate in Kanawha County, West Virginia, mentioned in the complaint.

From the foregoing judgment plaintiff appealed.

*Thomas J. Harkins for plaintiff.*
*Merrick-Barnard & Heazel for defendant, Catholic Missionary Union.*

BROGDEN, J. There are, at least, two propositions of law settled in this State beyond dispute. These are: First, the fundamental object in construing a will is to discover and effectuate the intention of the testator; and, second, this intention must be arrived at by an examination of the entire will when read in the light of all the surrounding facts and circumstances. *Pilley v. Sullivan,* 182 N. C., 493; *Witty v. Witty,* 184 N. C., 375; *Gordon v. Ehringhaus,* 190 N. C., 147.

It appears from the facts found by the trial judge that Rose Mary Byrne survived the testatrix, Mary W. Byrne, and died without ever having been married and without issue. Therefore, items three and four of the will of Mary W. Byrne have no application.

In item two of the will it is provided "if she (Rose Mary Byrne) shall leave no issue surviving her, then I give said the remaining principal to the same legatees as hereinafter provided for the residuary of my estate," etc. We think the words "residuary of my estate" refer to the residuary clause of the will, which is item five thereof, and that under the provisions of item five the defendant takes the property in dispute. It is contended by the plaintiff that item five is not a residuary clause. The legal characteristics of a residuary clause in a will are described as follows, by *Walker, J.,* in *Faison v. Middleton,* 171 N. C., 170. " 'Residue,' meaning that which remains, no particular mode of expression is necessary to constitute a residuary clause. The words 'rest,' 'residue,' or 'remainder' are commonly used in the residuary clause, whose natural position is at the end of the disposing portion of the will; but all that is necessary is an adequate designation of what has not otherwise been disposed of, and the fact that a provision so operating is not called the residuary clause is immaterial." In discussing the question of a residuary clause in a will the learned *Justice* says further: "In order to ascertain what is given, or whether any particular thing is well given, by a specific gift, you must look to see whether that particular item is included. The question is whether it is included or not; but once given a residuary gift large enough in its language to comprehend residue, the question is, not what is included, but what is excluded." *Gordon v. Ehringhaus,* 190 N. C., 147.

Applying these principles of law to the facts presented in the record, it is obvious that item five constitutes the residuary clause of the will, and that, by virtue of reference thereto in item two of the will, the defendant, Catholic Missionary Union, is entitled to the property. Therefore, the judgment of the court was correct. The substituted trustee shall pay the cost out of the fund before distribution is made.

Affirmed.